UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Josh Reed *aka* Joshua Alexander Reed, | ) | C/A No. 9:24-cv-05978-SAL-MHC |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Warden of Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Josh Reed *aka* Joshua Alexander Reed ("Petitioner"), a state prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2254. ECF Nos. 1, 6. This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment ("Motion"). ECF Nos. 19, 20. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Petitioner of the Motion and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 21. Petitioner filed a Response in Opposition. ECF No. 28. The matter is ripe for review.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion, ECF No. 20, be granted, and the Amended Petition, ECF No. 6, be dismissed with prejudice.

## BACKGROUND

The procedural history as described by Respondent has not been disputed by Petitioner and is set forth as follows. Petitioner is confined in the South Carolina Department of Corrections at Perry Correctional Institution. ECF No. 6.

1

## I.    State Criminal Case

On January 22, 2013, Petitioner was indicted by the Darlington County Grand Jury for the offenses of murder (Indictment No. 2013-GS-16-0262) and possession of a weapon during a violent crime. (Indictment No. 2013-GS-16-0263). ECF No. 19-4 at 135–38.

All parties appeared before the Honorable Howard P. King for trial beginning on October 21, 2013. ECF Nos. 19-1, 19-2, 19-3, 19-4. The case was prosecuted by Assistant Solicitors John W. Holt and Patti M. Parker of the Fourth Circuit Solicitor's Office. Attorneys J. Richard Jones and Julie Wooten represented Petitioner at trial. Attorney Matthew S. Swilley represented Petitioner's co-defendant (and brother), Jonathan Reed, who was tried simultaneously.

At the conclusion of the trial, a jury found Petitioner guilty of murder and possession of a weapon during the commission of a violent crime. ECF No. 19-4 at 20–21. Co-defendant Jonathan Reed was found not guilty on all charges. *Id.* at 21. After the recitation of the verdict, Petitioner appeared before the trial court for sentencing and was sentenced to a term of imprisonment for the remainder of his natural life for the offense of murder and for five years, to run concurrently, for the weapon offense. *Id.* at 30–35.

On November 13, 2024, Petitioner's appellate counsel submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), along with a petition to be relieved as counsel. ECF No. 19-4 at 37–51. Petitioner submitted a written pro se brief on January 9, 2015. ECF No. 19-4 at 52–53. After consideration of Petitioner's pro se brief and review pursuant to the *Anders* brief, the Court of Appeals issued an unpublished decision dismissing the appeal and granting appellate counsel's petition to be relieved. ECF No. 19-4 at 713–14, *State v. Reed*, Op. No. 2015-UP-484 (S.C. Ct. App. filed Oct. 14, 2015). Thereafter, on November 13, 2015, remittitur was issued. ECF No. 19-4 at 715–16.

## II.     Post-Conviction Relief Action

Petitioner filed a pro se application for post-conviction relief ("PCR") on November 3, 2016, asserting the following grounds:

1. "[Applicant] was denied the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amend. to the United States Const. and by Article I, §§ 3 and 14 of the S.C. Const. During Case: Guilty Plea, etc."

   a. "Plea counsel failed to advise applicant about a plea for 30 years until the day of the plea trial";

   b. "Counsel failed to place the legal tiny process against the crime video from the scene of the alleged crime incident, etc.";

   c. "Failed to fully examine the State's eyewitnesses and disclose their criminal back ground data NCIC reports, etc. No accounts to show investigative duties to the case required, etc.";

   d. "Counsel failed to have state eyewitness ID for the purposes of witnesses giving reports to the police and investigators but in the truth finding process the potential state eyewitness was placed under arrest for the name of Asia Gregg, etc."; and

   e. "Counsel failed to compel the State to provide the forensic reports of the serology sect. showing the finding of the gun powder residue on the Applicant that was performed on him, the counsel was participating in the hiding information acts through coordination by the State, the counsel did not provide the finding of the serology report until 20 months as said that's when the SLED sent them back to the state, etc."

2. Prosecutorial misconduct, in that:

   a. "As the issue [referring to 1.e above] is compiled with a Brady violation claim that it being the case counsel indulged in violating the Applicant's constitutional rights to have the State's files disclosed to him, in a reasonable time frame to have the files inspected for himself and discussed with the counsel."

ECF No. 19-4 at 59–66.

Attorney Lance Boozer subsequently was appointed to represent Petitioner in the PCR action and filed an amendment to the prior pro se application for PCR on December 14, 2017, adding the following grounds for PCR relief:

3

3. Ineffective assistance of counsel, in that:

    a. "Counsel was ineffective for failing to request that Applicant's case be severed from his co-defendant's case"; and

    b. "Counsel was ineffective for failing to object, strike, request severance and/or mistrial and otherwise act based on the prejudicial statements made by co-defendant's counsel during trial."

ECF No. 19-4 at 74–76.

On January 16, 2018, an evidentiary hearing was convened in Darlington County, with the Honorable Rodger E. Henderson presiding ("PCR Court"). ECF No. 19-4 at 77–120. Assistant Attorney General Johnny James represented the State, and Mr. Boozer represented Petitioner. *Id.* At the end of the hearing, the PCR Court took the case under advisement. *Id.* at 119. The PCR Court subsequently issued a written order, dated March 14, 2018, and filed March 21, 2018, dismissing the PCR application. *Id.* at 122–34.

On March 30, 2018, on Petitioner's behalf, his PCR counsel filed an initial notice of appeal before the Supreme Court of South Carolina. ECF No. 19-5. On behalf of Petitioner, Joanna K. Delany, Appellate Defender for the South Carolina Commission on Indigent Defense Division of Appellate Defense, filed a petition for writ of certiorari in the Supreme Court of South Carolina on November 26, 2018, and raised the following issue:

> Whether the PCR court erred in finding defense counsel was effective where he neither moved for severance nor objected or moved for a mistrial when counsel Swilley, who represented petitioner's codefendant brother during their joint trial, said that although the codefendant would not testify against petitioner that Swilley knew and conceded petitioner shot the decedent and Swilley's codefendant client merely ran away, since Swilley was injecting devastatingly prejudicial alleged facts into the trial that were not in evidence?

ECF No. 19-6 at 3.

On April 24, 2019, the Supreme Court transferred this case to the South Carolina Court of

4

Appeals,[1] ECF No. 19-7, which held oral argument on October 13, 2021. *See* ECF No. 19-8 at 1.

On March 2, 2022, the Court of Appeals issued an unpublished opinion affirming the decision of

the PCR Court. *Id.* In so doing, the Court of Appeals disagreed, in part, with the PCR Court and

found as follows: "Because the codefendant did not testify or implicate Reed as the shooter, we

find that a reasonable attorney would have objected to the codefendant's closing argument and that

Reed's counsel's failure to object was deficient under prevailing professional norms." ECF No.

19-8 at 2, *Reed v. State*, Op. No. 2022-UP-083 (SC. Ct. App. filed Mar. 2, 2022). However, the

Court agreed with the PCR Court that Petitioner was not prejudiced by counsel's deficiency:

> Although trial counsel's failure to object was deficient, we find Reed was not
> prejudiced by the comments of the codefendant's counsel. At trial, Reed faced three
> eyewitnesses who were all within several yards of Reed and the victim at the time
> of the shooting and who all identified Reed as the shooter. After the shooting, at
> the police station, all three witnesses had no trouble identifying Reed and the
> codefendant, and they did not have trouble identifying Reed as the shooter in a
> photo lineup. Further, all three witnesses stated Reed and the codefendant
> approached and fled the scene in a green truck. While not dispositive of who shot
> the victim, an exhaust pipe found at the crime scene matched the green truck
> officers later found at Reed and the codefendant's home. Also, officers performed
> a gunshot residue test on Reed and the codefendant. Although both tested positive
> for gunshot residue, Reed had gunshot residue on the palm and backside of his right
> hand, and he also had residue on the shirt he was wearing when officers arrested
> him hours after the shooting. Conversely, the codefendant only had one particle of
> residue on the backside of his left hand. Finally, the trial court cautioned the jury
> that codefendant's counsel's remarks were not evidence. Because the evidence
> against Reed solely pointed to him as the shooter, we find Reed was not prejudiced
> by trial counsel's failure to object or move for severance or a mistrial during the
> codefendant's opening and closing statements.

*Id.* at 2–3 (internal citations omitted). The Court of Appeals thus affirmed the PCR Court's Order

denying Petitioner's PCR application. *Id.*

---

[1] Pursuant to South Carolina Appellate Court Rule 243(l), "The Supreme Court may transfer a case filed under this rule to the Court of Appeals." If transferred, the Court of Appeals shall proceed with the case in the same manner as the Supreme Court would have done, with the exception that a petition for writ of certiorari may be granted by one judge of a three-judge panel. Rule 243(l), SCACR.

On March 17, 2022, the State filed a petition for rehearing, ECF No. 19-9, which the Court of Appeals denied on May 19, 2022. ECF No. 19-10. The remittitur was issued on June 27, 2022, and was filed by the Darlington County Clerk of Court on July 5, 2022. ECF No. 19-11.

On October 21, 2024, Petitioner filed a petition for writ of habeas corpus in the District Court of South Carolina. ECF No. 1. He filed an Amended Petition on November 19, 2024. ECF No. 6. Respondent filed a Motion for Summary Judgment is response to the Amended Petition. ECF No. 20.

## STANDARDS OF REVIEW

### I.      Summary Judgment Standard

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Id*. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id*. at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Id.* at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## II.     Federal Habeas Review under 28 U.S.C. § 2254

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, in considering Petitioner's claims, the Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d). *See Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

28 U.S.C. § 2254(d); *see also Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (explaining federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding"). A state court's decision is contrary to clearly established federal law if that court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Evans*, 220 F.3d at 312 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision unreasonably applies clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413).

Because "review under § 2254(d)(1) focuses on what a state court knew and did," this Court measures the reasonableness of the state court's decision based on the information in the record before the state court. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)). "Likewise, § 2254(d)(2) provides for a limited review of factual determinations in light of the evidence presented in the State court proceeding[;] [thus,] [t]his backward-looking language similarly requires an examination of the state-court decision at the time it was made." *Id.* (citation and internal quotation marks omitted).

Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Williams*, 529 U.S. at 410. Further, factual findings "made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III.    Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural default/bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before a petitioner has appropriately exhausted available state-court remedies or after a petitioner has otherwise defaulted/bypassed seeking relief in the state courts will be dismissed absent unusual circumstances, as detailed below.

### A.  Exhaustion

Section 2254 contains the requirement of exhausting state court remedies. *See* 28 U.S.C. § 2254(b)–(c). The statute requires that, before seeking habeas corpus relief, a petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). Stated plainly, in the interest of giving state courts the first opportunity to consider alleged constitutional errors in state proceedings, a § 2254 petitioner is required to "exhaust" all state remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law

requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will generally result in the application of a procedural bar by the South Carolina Supreme Court. *See Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009) (discussing procedural bar and noting the "general rule" in South Carolina is that where a party fails to file a Rule 59(e) motion, the argument is forfeited). Furthermore, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. In South Carolina, a claim is not procedurally barred from review in this Court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals. *See Remedies in Criminal and Post–Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454 (S.C. 1990) ("[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").

**B.  Procedural Default/Bypass**

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). This situation is sometimes referred to as procedural bypass, as the petitioner has "bypassed" his state remedies. In other words, procedural default/bypass of a constitutional claim in earlier state proceedings forecloses

consideration by the federal courts. *See id.* Procedural default/bypass can occur at any level of the state proceedings, if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See, e.g.*, *Evans v. State*, 611 S.E.2d 510, 515 (S.C. 2005) (noting an "issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review" (citation omitted)). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984). If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by United States v. Barnette,* 644 F.3d 192 (4th Cir. 2011); *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989).

### C. Cause and Actual Prejudice

Notwithstanding the foregoing, a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction in very limited circumstances. *See*

*Granberry v. Greer*, 481 U.S. 129, 131 (1987). Indeed, because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the state's courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008).

A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray v. Carrier*, 477 U.S. 478, 488–97 (1986). Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Id.* at 496.

## DISCUSSION

Petitioner raises the following grounds for relief in his Petition:

**Ground One:** They say I had a gun which is not true they didn't have any evidence and if I shot a gun how they say I had 3 particles of which I didn't put the person that had done the gun powder kit kept telling me they didn't get the results back but its been 20 months. It do not take that long to get results back and when a firearm is shot it left so little particles each round that is shot so there is not way possible that it was me. They had 3 convicted felons on the stand trial on me which is not right is a violation they say in the beginning I didn't do it then come back in said I did it but they said my brother did it first they made stuff up.

**Ground Two:** They tried me and my brother at the same time when we were suppose to have 2 different trials. The times of video tapes when I was at the store clearly shows that I could have not commit the crime there totally different from the crime service as a witness saying I didn't do it. And in black and white and they

still send me to prison its not right my family tells them the same I didn't do it I was home all day until I went to the store to get something for my mother and came right back.

**Ground Three:** Ineffected Consolover my lawyer didn't speak up of me in trial. He told me not to say nothing by do so he did not bring up issues he was suppose to that I told him I was young at the time. I didn't know the system and that's what got me prison time.

**Ground Four:** Yes hand of one hands of all rule was not effected in my case. My co-defendant was release so I was suppose to be to[.] He was accused of doing the crime as well even knowing he was not guilty just as me he still got set free even when the witness state at trial he was guilty of the crime but he was still release and that's not right because he was release I was suppose to be as well when I was sent to prison he was suppose to be as well[.] We wore both in trial side by side at the same time being tried.

ECF No. 6 at 5–10 (errors in original).

In the Return and Memorandum of Law in support of Respondent's Motion, Respondent argues that summary judgment is warranted for the following reasons: (1) Petitioner failed to file his Petition within the time allotted under federal law; (2) Petitioner's Ground Four is procedurally defaulted because Petitioner did not present this issue in State court; and (3) Petitioner has not shown a basis for habeas relief, as there was not an unreasonable determination of the facts that were presented in his case, and he has not shown prejudice. ECF No. 19.

## I.     STATUTE OF LIMITATIONS

Respondent argues that all of Petitioner's claims are time-barred. ECF No. 19 at 14–15. Under § 2244(d), the State bears the burden of asserting the statute of limitations as an affirmative defense. *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002). Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). Upon review, the undersigned agrees with Respondent that Petitioner's claims are time-barred.

### A. Statute of Limitations in Habeas Cases

The AEDPA provides that "[a] 1–year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Subsection (d) of the statute provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending *shall not be counted* toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). Subsections (d)(1) and (d)(2) carry differing requirements for the tolling of the statutory time.

### 1. Subsection (d)(1)

Subsection (d)(1)(A) specifies the one-year statute of limitations begins to run on the date the petitioner's conviction becomes final—i.e., at the conclusion of *direct review*—not after collateral review is completed. *See* 28 U.S.C. § 2244(d)(1)(A); *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within ten

days of his conviction. Rule 203(b)(2), SCACR. Thus, if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt and the one-year statute of limitations begins to run.

If a defendant files a direct appeal and his conviction is affirmed, the timing of when the conviction becomes final depends on whether the defendant pursued his direct appeal to the highest state court. *Compare Harris*, 209 F.3d at 328 n.1 (noting conviction becomes final on the expiration of the ninety-day period to seek review by the United States Supreme Court from a state's highest court), *with Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (holding, "with respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires"). Thus, if a defendant pursues his direct appeal all the way to the Supreme Court of South Carolina—the highest state court—his conviction becomes "final" ninety days after the final ruling of that Court. *See Harris*, 209 F.3d at 328 n.1.

However, if a defendant pursues his direct appeal to the South Carolina Court of Appeals— the intermediate state appellate court—and forgoes petitioning the Supreme Court of South Carolina for a writ of certiorari after the Court of Appeals has affirmed his conviction, then his conviction becomes "final" **either fifteen *or* thirty days** after the ruling of the Court of Appeals. Specifically, a defendant's conviction becomes final **fifteen days** later if he fails to properly file a petition for rehearing in the Court of Appeals.[2] *See, e.g.*, *Grant v. Bush*, No. 6:14-CV-01313-DCN, 2015 WL 4747104, at *5 (D.S.C. Aug. 11, 2015) ("In light of his *failure to file a timely petition*

---

[2] This is because a petition for rehearing is a prerequisite for petitioning the Supreme Court of South Carolina. *See* Rule 242(c), SCACR (establishing that an appellant cannot petition the Supreme Court of South Carolina for review of the Court of Appeals' decision unless a petition for rehearing is filed in and acted on by the Court of Appeals); *Gonzalez*, 565 U.S. at 154 (holding, "with respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires").

*for rehearing*, Grant's state court convictions became final on February 27, 2009, *fifteen days after* the South Carolina Court of Appeals issued its opinion in Grant's direct appeal." (emphasis added)); *see also* Rule 221(a), SCACR ("Petitions for rehearing must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court."). Conversely, a defendant's conviction becomes final **thirty days** later if he properly files a petition for rehearing in the Court of Appeals, but nevertheless fails to petition the Supreme Court of South Carolina. *See Gonzalez*, 565 U.S. at 154; Rule 242(c), SCACR ("A petition for writ of certiorari shall be served on opposing counsel and filed with proof of service with the Clerk of the Court of Appeals and the Clerk of the Supreme Court within thirty (30) days *after the petition for rehearing or reinstatement* is finally decided by the Court of Appeals." (emphasis added)).

### 2. Subsection (d)(2)

On the other hand, subsection (d)(2) of § 2244 concerns collateral review. It provides that the statute of limitations is tolled during the period of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)[.]" *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999). "Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled[.]" *Crawley v. Catoe*, 257 F.3d 395, 399 (4th Cir. 2001).

A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original) (footnote omitted). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

In addition to being "properly filed," a state collateral proceeding must be "pending" in order for § 2244(d)(2)'s statutory tolling provision to apply. The U.S. Supreme Court has explained that "[t]he time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 141 (2006) (emphasis in original); *see Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court.").

**B. Petitioner did not timely file his Petition.**

The federal time limit begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Generally, federal courts use Federal Rule of Civil Procedure 6(a) in computing periods of time under 28 U.S.C. § 2244(d). *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

Petitioner was convicted via jury trial on October 24, 2013. ECF No. 19-4 at 20–21. Petitioner timely appealed to the South Carolina Court of Appeals by way of an *Anders* brief. *Id.* at 37–54. The Court of Appeals dismissed the appeal on October 14, 2015. *Id.* at 55–56. Petitioner did not file a Petition for Rehearing, and thus his conviction and sentence became final **90 days** after the South Carolina Court of Appeals dismissed the *Anders* appeal. *See Wright v. McFadden*, No. 5:14-CV-00282-TLW, 2014 WL 6666681, at *10 (D.S.C. Nov. 24, 2014) (noting, in light of South Carolina case law, when the South Carolina Court of Appeals, rather than the Supreme Court of South Carolina, reviews and issues an opinion "concerning an *Anders* appeal, the Court of Appeals is the highest court 'in which a decision could be had'" and thus an appellant could directly seek the United States Supreme Court's review of the *Anders* opinion within ninety days of the South Carolina Court of Appeals' decision); *see also Heydman v. Williams*, No. 0:21-CV-00019-DCC, 2021 WL 4785821, at *2 (D.S.C. Oct. 14, 2021) (determining the statute of limitations for a petitioner who had his *Anders* appeal dismissed began to run ninety days after the South Carolina Court of Appeals' opinion was filed).

Accordingly, Petitioner's conviction became final on January 12, 2016, and the statute of limitations would have begun to run on the following day, January 13, 2016.[3] *See* Fed. R. Civ. P. 6(a) (stating, for computing time, "exclude the day of the event that triggers the period");

---

[3] Normally, his convictions would have become final for purposes the statute of limitations **fifteen days** from the date of the Court of Appeals' decision because he failed to file a petition for rehearing. *See* Rule 221(a), SCACR ("Petitions for rehearing must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court."); Rule 242(c), SCACR (establishing that an appellant cannot petition the South Carolina Supreme Court for review of the Court of Appeals' decision unless a petition for rehearing is filed in and acted on by the Court of Appeals); *Grant*, 2015 WL 4747104, at *5 ("In light of his failure to file a timely petition for rehearing, Grant's state court convictions became final on February 27, 2009, fifteen days after the South Carolina Court of Appeals issued its opinion in Grant's direct appeal."). However, as noted above, an *Anders* appeal alters the time by which a conviction becomes final for purposes of the statute of limitations.

*Hernandez*, 225 F.3d at 439 (finding the AEDPA's effective date was April 24, 1996, and "the actual count on the limitations period began on April 25, 1996," the following day).

Petitioner filed his PCR application on November 3, 2016, after a lapse of 295 days. ECF No. 19-4 at 59–66. The statute of limitations was suspended on this date and continued to be tolled while Petitioner's state PCR action was pending in state court. *See* 28 U.S.C. § 2244(d)(2) (a "properly filed application for State post-conviction relief or other collateral review" tolls the time for filing); *see Wall v. Kholi*, 562 U.S. 545, 547 (2011) (holding that "the phrase 'collateral review' in § 2244(d)(2) means judicial review of a judgment in a proceeding that is not part of the direct review process").

Petitioner's state PCR action concluded, at the latest, on July 5, 2022, when the Darlington County Clerk of Court filed the remittitur from the PCR appeal. ECF No. 19-11; *see Gonzalez*, 565 U.S. at 152 n.10 (distinguishing between the provisions of § 2244(d)(2) and (d)(1)); *Beatty v. Rawski*, 97 F. Supp. 3d 768, 779–80 (D.S.C. 2015) (holding, for purposes of tolling the statute of limitations under § 2244(d)(2), that the date the Remittitur was filed in the state circuit court is proper in light of *Gonzalez*); *see also* Rule 221(b), SCACR; *Lyles v. Reynolds*, No. 6:15-CV-04229-RMG, 2016 WL 4940319, at *3 (D.S.C. Sept. 14, 2016) (citing *Beatty* and noting that South Carolina's highest courts have uniformly held disposition of a PCR appeal is not final until remittitur is filed in the circuit court); *Harleysville Mut. Ins. Co. v. State,* 736 S.E.2d 651, 655 n.2 (S.C. 2012) ("An opinion of an appellate court is not final until the remittitur is filed in the lower court"). Thus, the statute of limitations began to run again on July 6, 2022, and Petitioner had until September 14, 2022 (365 days – 295 days = 70 days) to file his federal habeas petition.

Petitioner filed his federal habeas Petition on October 18, 2024, when he handed the Petition to the prison mailroom. ECF No. 1. More than two years had elapsed since the conclusion

of his state PCR case on July 5, 2022. Therefore, even if none of the time allotted under AEDPA had run prior to the filing of the state PCR action and Petitioner had his full year allotted under AEDPA to file his federal habeas petition beginning on July 6, 2022, Petitioner's Petition was filed more than one year too late. *See* ECF No. 1. Consequently, because Petitioner filed outside the one-year statute of limitations, this action is untimely under 28 U.S.C. § 2244(d).

### C. Equitable tolling is not appropriate.

The AEDPA's statute of limitations is not jurisdictional, *Harris*, 209 F.3d at 329–30, and it "is subject to equitable tolling in appropriate cases," *Holland v. Florida*, 560 U.S. 631, 645 (2010). To benefit from the doctrine of equitable tolling, Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace*, 544 U.S. at 418); *Rouse*, 339 F.3d at 246 (holding that, for equitable tolling to apply, a petitioner must show that there were "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time").

Petitioner does not respond to Respondent's timeliness argument. *See* ECF No. 28. However, in the cover letter accompanying his initial Petition filed in October 2024, Plaintiff stated, "[I]n 2022 I got a letter from the courts about my habeas corpus[.] Then a couple months later I got ship[ped] to Mississippi. I've been there since 2024[.] They said once I got there my legal mail will be ship[ped] to me but my mail of the habeas corpus come now that I've been back to South Carolina for 6 months." ECF No. 1-1.

Even construing Petitioner's cover letter liberally, Petitioner has failed to show extraordinary circumstances prevented him from timely filing. Courts within this District have consistently held that institutional transfers and delays in receiving legal materials generally do

not qualify as extraordinary circumstances sufficient to warrant equitable tolling. *See, e.g.*, *Simuel v. Cohen*, No. 223CV01447HMHMGB, 2023 WL 8812535, at *6 (D.S.C. Nov. 28, 2023) (explaining that "it is well settled that a delay in receiving legal materials generally does not qualify as an extraordinary circumstance warranting equitable tolling" and finding no extraordinary circumstances where petitioner alleged he did not have access to his "legal materials" for a four-year period), *report and recommendation adopted,* No. CV 2:23-1447-HMH-MGB, 2023 WL 8809921 (D.S.C. Dec. 20, 2023); *Ayton v. Williams*, No. 9:19-CV-03234-DCN-MHC, 2020 WL 13739268, at *6 (D.S.C. Nov. 19, 2020) (explaining that the petitioner's alleged delay in receiving his legal materials after transfer to new institution, without more, could not satisfy the petitioner's burden to show that he diligently pursued his rights or that extraordinary circumstances prevented him from timely filing his petition), *report and recommendation adopted,* 2021 WL 11133507 (D.S.C. Mar. 9, 2021); *Grant v. Bush*, No. 6:14-CV-01313-DCN, 2015 WL 4747104, at *8 (D.S.C. Aug. 11, 2015) (finding that petitioner's transfer among multiple prison facilities resulting in a delay of receipt of legal paperwork did not amount to an extraordinary circumstance); *Wright v. McFadden*, No. 5:14-CV-00282-TLW, 2014 WL 6666681, at *2 (D.S.C. Nov. 24, 2014) (finding that prison riot resulting in seizure of petitioner's legal materials did not amount to an extraordinary circumstance).

Here, Petitioner acknowledges that he received notice in 2022 that his PCR case had ended, and he does not deny that he did not file the instant habeas case until 2024. Petitioner has neither argued nor shown that he was unable to file a habeas petition at any time after he received notice in 2022 that his PCR case had ended, nor has Petitioner explained what he did during this additional time to assist himself in the preparation of his habeas petition. Although Petitioner states that he did not have his "legal mail" while he was in Mississippi, Petitioner has provided no explanation

of how the alleged delay in receiving his legal mail after the transfer to the new institution prevented him from timely filing his Petition, particularly when he had already received notice that the PCR case had ended. Consequently, Petitioner has not shown that he has diligently pursued his rights or that "extraordinary circumstances" prevented him from timely filing his petition. *See Holland*, 560 U.S. at 649. Thus, Petitioner has not established that the limitations period should be equitably tolled. *See Harris*, 209 F.3d at 330 (noting a petitioner has the burden of showing equitable tolling); *see also May v. Warden of Goodman Corr. Inst.*, No. CV 5:22-417-RMG-KDW, 2022 WL 18635155, at *5 (D.S.C. Nov. 3, 2022) (finding, where petitioner was aware of the dismissal of his PCR appeal but was missing legal papers as a result to a transfer to a new institution, that petitioner had not demonstrated due diligence or extraordinary circumstances to warrant equitable tolling), *report and recommendation adopted,* No. 5:22-CV-417-RMG, 2023 WL 154938 (D.S.C. Jan. 11, 2023). Accordingly, the undersigned recommends that the Petition be dismissed with prejudice on statute of limitations grounds.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Respondent's Motion (ECF No. 20) be **GRANTED** and that the Petition be **DISMISSED with prejudice.**

January 15, 2026                                 Molly H. Cherry
Charleston, South Carolina                United States Magistrate Judge


**The parties are directed to the next page for their rights to file objections to this recommendation.**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).